IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MELVELYN BROWN, | § | |
| *as next friend of* O.F., | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-05-0042 |
| | § | |
| NORTH FOREST INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
| Defendant. | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

On April 29, 2005, the parties consented to proceed before a United States Magistrate Judge for all matters, including entry of final judgment, under 28 U.S.C. § 636(c). On the same day, the case was transferred to this court for disposition. Now pending is the motion by Defendant North Forest Independent School District ("Defendant," "the school district") to dismiss the case for lack of subject matter jurisdiction. (Docket entry # 17). Defendant urges dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure, but has presented no evidence, nor argued any matters outside the pleading. On review, the court has weighed the motion as one for failure to state a claim under Rule 12(b)(6), has notified the parties of that, and has afforded Plaintiff all of the procedural protections that rule provides. Having considered the motion, the opposition, the arguments of the parties, and the applicable law, the court finds that Plaintiff has failed to state a claim upon which relief can be granted, and orders the case **DISMISSED**.

**Background**

In February 2003, O.F., a minor child, was enrolled in a pre-kindergarten class at Lakewood Elementary School, within the North Forest Independent School District. (First Amended Complaint [Complaint], Docket Entry # 16). The child's father, Oscar Franklin, was suspected of abusing her, and so he was not authorized to remove her from the school premises. (*Id.* at ¶ 5). Plaintiff Melvelyn Brown ("Plaintiff," "Brown"), the child's mother and "primary managing conservator," notified school officials about this prohibition at the time O.F. was enrolled. (Complaint, Ex. A). In fact, the school had been alerted,

more particularly, that neither Oscar Franklin, nor three other persons, including his sister, Vanida Marsh,[1] were permitted to escort O.F. from the school grounds. (Complaint, Ex. B). Nevertheless, on February 12, 2003, Vanida Marsh was allowed to take O.F. from the school, allegedly on behalf of Oscar Franklin. Marsh took the child without Plaintiff's knowledge or permission, and it is alleged that she did so without presenting any identification or proof of authority to the school personnel. (Complaint at ¶¶ 6, 7). Reportedly, Franklin then "absconded" with O.F., leading to an investigation by local and federal authorities. (*Id.* at ¶ 9). Sometime after O.F.'s disappearance, Defendant received a request to transfer the child's records to an elementary school in Port Arthur, Texas. (*Id.* at ¶ 10). The school district never notified the law enforcement agencies, or even Plaintiff, that the minor child was apparently attending school in East Texas. Instead, it merely sent the transcripts as requested. Finally, after the child was recovered and returned, the school reportedly falsified documents in an attempt to disguise its negligence and evade responsibility for the abduction. (*Id.*). An enrollment card containing false information was substituted for the actual card Plaintiff filed at the time O.F. was registered at the elementary school. (*Id.*). The "false enrollment card" did not include any prohibition against releasing the child to Oscar Franklin. (*Id.* at ¶ 10).

More than six months after her disappearance, O.F. was located, still in the company of Oscar Franklin. He was arrested on criminal charges, and she was returned to her mother. (*Id.* at ¶ 11). It is alleged, and for these purposes the court assumes that it is true, that the child "suffered severe and irreparable physical and emotional harm" as a result of her abduction by her non-custodial parent. (*Id.* at ¶ 12). In this lawsuit, Plaintiff complains that the abduction and the resulting harm would not have occurred but for the "grossly negligent conduct and deliberate indifference" of the school district. (*Id.*). For that reason, Plaintiff alleges that this "egregious conduct" amounts to a violation of her child's "constitutional right to be free from the illegal restraints and custody of Oscar Franklin," and so she filed this claim, which purports to be one under 42 U.S.C. § 1983. (*Id.*).

---

[1] The enrollment card names "Verne Marsh" as one of the persons without authority to leave with the child. (Complaint, Ex. B). However, the pleadings and arguments of the parties make clear that the individual named on the enrollment card is Oscar Franklin's sister, Vanida Marsh.

In response to the Complaint, the school district contends that this court is without subject matter jurisdiction to entertain this action because no constitutional violations have been alleged. (Motion to Dismiss by North Forest Independent School District [Motion], Docket entry # 17). Defendant points out that Plaintiff's action, although invoking § 1983, is actually one for a common law claim of negligence. (Motion at ¶ 15). Clearly, this court has jurisdiction to decide issues raised under § 1983. *See, e.g.*, *Rivera v. Houston Independent School District*, 349 F.3d 244 (5th Cir. 2003). However, the court agrees with Defendant that the Complaint alleges negligence only, and does not state a claim for the violation of a constitutional right. For that reason, the Complaint should be dismissed for failure to state a claim under Rule 12(b)(6), and Plaintiff should be allowed to pursue her allegations in state court.

**Standard of Review**

In ruling on a motion to dismiss an action under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the allegations as true, view them in a light most favorable to the plaintiff, and draw all inferences in her favor. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 246-47 (5th Cir. 1997). The motion must be denied unless it appears to a certainty that the plaintiff can prove no set of facts that would entitle her to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Collins*, 224 F.3d at 498. Although Rule 12(b)(6) is a powerful tool that can expedite the judicial process and excise court calendars of cases in which there are no judicially cognizable claims, it is a disfavored motion and is granted sparingly. *See Collins*, 224 F.3d at 498; *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).

More importantly, a Rule 12(b)(6) dismissal is not warranted merely because the court believes that the complainant is unlikely to prevail on the merits. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Even if it appears "almost to a certainty to the court that the facts alleged cannot be proved to support the legal claim," the suit may not be dismissed if the complaint indeed states a claim. *Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921, 927 (5th Cir. 1988). Dismissal is proper, however, if the complaint does not

allege a required element necessary to obtain relief. *See Blackburn v. City of Marshall, Tex.*, 42 F.3d 925, 931 (5th Cir. 1995). Moreover, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.*; *see also Collins*, 224 F.3d at 498.

Generally, in considering a motion to dismiss for failure to state a claim, a district court must limit its inquiry "to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). But documents attached to a defendant's motion to dismiss may also be considered, "if they are referred to in the plaintiff's complaint and are central to her claim." *Collins*, 224 F.3d at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). Such documents "merely assist[] the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id*. at 499. Further, a court is "permitted to refer to matters of public record in deciding a 12(b)(6) motion to dismiss." *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995). However, the court should take care to consider these records "only for the purpose of determining what statements the documents contain, not to prove the truth of [their] contents." *Lovelace*, 78 F.3d at 1018.

**Discussion**

To state a valid claim under § 1983, a plaintiff must (1) allege that she suffered a deprivation of rights secured by the Constitution, and (2) that the deprivation was committed by a person acting under color of state law. 42 U.S.C. § 1983. A liberty interest in one's "bodily integrity" is a recognized substantive right that is protected by the Due Process Clause of the Fourteenth Amendment. *Doe v. Taylor Ind. Sch. Dist.*, 15 F.3d 443, 445 (5th Cir. 1994). For that reason, whether the school district violated O.F.'s constitutional rights, under § 1983, must be weighed in the context of due process jurisprudence.

The United States Supreme Court has held repeatedly that "nothing in the language of the Due Process Clause itself requires a state to protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 195 (1989). From the pleadings and arguments of counsel, it is clear that O.F.'s presumed injury arose at the hands of her

father, Oscar Franklin. Notwithstanding *DeShaney* and its progeny, however, there are two limited circumstances in which state officials have been held liable, under § 1983, for harm inflicted by private actors. The first of these arises in those instances in which the state has been held to owe an affirmative duty of care that stems from its "special relationship" with the claimant. The second circumstance, from which liability can arise, is an instance in which it can be said that the state has created a dangerous environment which leads to the constitutional deprivation. *See Johnson v. Dallas Independent School District*, 38 F.3d 198, 200 (5th Cir. 1994).

### a. Special Relationship

The Supreme Court has held that a "special relationship" can develop from "the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty." *DeShaney*, 489 U.S. at 200. In *DeShaney*, the injured minor, Joshua, suffered a severe beating from his father, even though he had been the subject of repeated social services investigations. The child's mother sued the county department of social services and several individual social workers under § 1983. She alleged that, although they had received numerous complaints that the child's father was abusing him, officials failed to remove Joshua from his custody, and the injuries resulted from that failure. On those facts, the Supreme Court held that the state had no constitutional duty to protect the child from injuries inflicted by a private actor, reasoning as follows:

> The [Due Process] Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*Id.* at 195. In *DeShaney*, the plaintiff's § 1983 claim was barred because the harm that her son suffered did not occur while he was in the state's "custody and control." *Id.* at 201. The Court found that affirmative obligations of protection arise only when the state "takes a person into its custody and holds him there against his will." *Id.* at 199-200. The Court reasoned that it is the restraint on the individual's freedom to act in his own behalf that imposes the duties of care and protection on the state. Such "special relationships" have been

5

recognized, for instance, in cases involving persons who are incarcerated or committed to mental health facilities. *See Estelle v. Gamble*, 429 U.S. 97 (1976); *Youngberg v. Romeo*, 457 U.S. 307 (1982). It is only those narrow circumstances which have given rise to a state's affirmative duty to protect individuals, subject to its control, from injury by private actors.

Since *DeShaney*, some courts have examined whether such a "special relationship" can be expanded to embrace the connection between a school and its students. In a few of those cases, claimants have argued that compulsory attendance laws, which require students to attend class for a substantial portion of the day, so restrain their liberty as to be the equivalent of state "custody." *See Wyke v. Polk County School Bd.*, 129 F.3d 560 (11th Cir. 1997); *D.R. by L.R. v. Middle Bucks Area Vo. Tech School*, 972 F.2d 1364 (3rd Cir. 1992); *Dorothy J. v. Little Rock School District*, 7 F.3d 729 (8th Cir. 1993); *J.O. v. Alton Community Unit Sch. Dist. 11*, 909 F.2d 267 (7th Cir. 1990). That argument has not yet gained favor. Instead the courts have relied on *DeShaney* to emphasize that it is the extent to which a school exercises dominion and control over its students that will determine whether a special relationship exists in the school setting. Generally, only an involuntary, physical restraint of the student will give rise to the duty of protection. Courts have declined, so far, to impose a duty on the state when students attend school for a set number of hours and then return home at the end of the day, to the supervision and protection of their parents. *Middle Bucks*, 972 F.2d at 1373; *Dorothy J.*, 7 F.3d at 732; *Alton Community*, 909 F.2d 272.

To date, the Fifth Circuit has not found that a special relationship exists between the state and students in the normal public school setting. For example, in *Leffall v. Dallas Independent School District*, 28 F.3d 521 (5th Cir. 1994), a public high school student was killed by random gunfire which erupted in the school parking lot following a school sponsored dance. His parent sued the school district and school officials asserting a § 1983 claim. Plaintiff argued that the state had "custody" of her son pursuant to the Texas compulsory school attendance laws. A panel of the Fifth Circuit determined that no special relationship had been established, emphasizing that the dance was held outside of regular school hours, at a time when students were not required to be present. *Leffall*, 28 F.3d at 529. Limiting its holding to the facts

before it, the court declined to speculate on whether other circumstances might create such a relationship, even in a public school setting. *Id*.

Later, a similar § 1983 claim was presented in *Johnson v. Dallas Independent School District*, 38 F.3d 198 (5th Cir. 1994). In *Johnson*, again, a public high school student was shot and killed, on the school grounds, and his parents also sought relief under § 1983. In that case, however, the shooting occurred in a school hallway, during regular school hours. Nonetheless, the court declined to find a "special relationship" between the deceased and the school, stating as follows:

> There can be no liability of state actors for this random criminal act unless the fourteenth amendment were to make schools virtual guarantors of student safety – a rule never yet adopted even for those in society, such as prisoners or the mentally ill or handicapped, who are the beneficiaries of a "special relationship" with the state.

*Id*. at 203. The majority of the court recognized that, even though arguments could be made to extend "special relationships" to public school settings, it was "compelled to observe the deficiencies of governing case law." *Id*. at 203 n. 7.

In fact, in *Walton v. Alexander*, 44 F.3d 1297 (5th Cir. 1995) (en banc), the court held that no "special relationship" existed even in a residential school environment. In that case, it was alleged that the superintendent of a residential, special education school had failed to protect one of the students from sexual assault by another student. The court, following *DeShaney*, recognized that "the state creates a 'special relationship' with a person only when the person is involuntarily taken into state custody and held against his will through the affirmative power of the state." *Id*. at 1304. The court held that, because the student attended the school of his own free will, and was not coerced in any manner by the state, his status as a resident did not place him within that narrow class of persons who are entitled to protection from private actors. *Id*. at 1305.

This court, likewise, declines to find that a "special relationship" exists between the school district and O.F. As noted, no Fifth Circuit case has yet found that a "special relationship" exists merely because of a child's attendance in a regular public school setting. *Doe v. Hillsboro Independent School District*, 113

F.3d 1412 (5th Cir. 1997).  In any event, Plaintiff here does not allege that O.F. was dependent on the school for her basic needs, or that her freedom to act was so restricted because of the attendance laws, alone, as to impose upon the school district an affirmative duty of care.

**b.      State-Created Danger**

Although no "special relationship" exists between the school district and O.F. which would give rise to § 1983 liability, the inquiry does not end there.  In this case, Plaintiff contends that the school district exhibited "deliberate indifference" to the minor child's constitutional rights by failing to prevent Oscar Franklin from abducting her during school hours. In an abundance of caution, the court views this contention as one which implicates a duty on behalf of the school to enforce either its own policies, or Plaintiff's custodial rights, to keep O.F. safe from injury at the hands of her estranged father.  In that regard, "[c]ourts have found a denial of due process when the state creates the faced dangers."  *Salas v. Carpenter*, 980 F.2d 299, 309 (5th Cir. 1992).  It is generally accepted that this theory of a "state-created danger" has evolved from the *DeShaney* analysis.  In *DeShaney*, the Supreme Court stated that "[w]hile the State may have been aware of the dangers that Joshua faced in the free world, it played no part in their creation, nor did it do anything to render him more vulnerable to them."  *DeShaney*, 489 U.S. at 201.  To state a viable claim under this theory, a plaintiff must allege that the state created, or increased, the risk of harm to the claimant, or did some act that rendered the claimant more vulnerable to the danger at issue in order to pursue a claim for a "state-created danger."  *Johnson*, 38 F.3d at 200.  Further, before any liability can attach, the state official must be shown to have acted with "deliberate indifference" to the plaintiff's constitutional rights.  *Id*.

In this case, Plaintiff alleges that, despite instructions not to release O.F. to Oscar Franklin and Vanida Marsh, the school did so without Plaintiff's permission, and without verifying Vanida Marsh's identity.  That action, Plaintiff claims, was in violation of the school's own policy, which is aimed at protecting children from harm by unauthorized persons. (Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Plaintiff's Response] at ¶ 12, Docket Entry # 18).  Plaintiff contends that this conduct displays the school district's deliberate indifference to O.F.'s constitutional rights.

Finally, Plaintiff alleges that the school district had full knowledge of the criminal investigation against Oscar Franklin, yet failed to notify the authorities when it received notice that O.F. was attending another elementary school. Plaintiff claims that this conduct directly contributed to both the abduction and the injuries that O.F. suffered. (*Id.* at ¶ 15).

On this 12(b)(6) motion, the court accepts these allegations as true, as well as all reasonable inferences that can be drawn from them. Unfortunately, however, a "state-created danger," for purposes of § 1983 liability, is not recognized in this circuit. Although the subject of discussion in earlier opinions, more recent Fifth Circuit decisions have refused to adopt that theory as a basis for § 1983 due process claims.[2] *See, e.g., Rivera v. Houston Independent School District*, 349 F.3d 244, 249 (5th Cir. 2003). In *Rivera*, an eighth grade student was stabbed to death on school grounds by another student. His parents brought suit against the school district, alleging that the school had created a dangerous situation by tolerating gang activity. On appeal from the trial court's grant of summary judgment for the school district, the Fifth Circuit held that "[w]e have never recognized state-created danger as a trigger of State affirmative duties under the Due Process Clause," and affirmed the ruling.[3] *See Rivera*, 349 F.3d at 249.

Finally, it is well-settled that a § 1983 claim must allege that the public entity acted in accordance with an "official governmental policy or custom," and that the policy or custom was the cause in fact of the alleged deprivation of constitutional rights. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*

---

[2] Arguably, state-created danger was recognized as actionable conduct in the panel decision in *McClendon v. City of Columbia*, 258 F.3d 432, 436 (5th Cir. 2001). However, after an en banc review, the Fifth Circuit was explicit that "the panel's ruling was vacated and with it our recognition of the theory." *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2002).

[3] Further, even if state-created danger is a recognized cause of action, past decisions make clear a claimant's heavy burden to make a prima facie showing. For instance, in *McKinney v. Irving Independent School District*, 309 F.3d 308 (5th Cir. 2002), a special-education student injured a school bus driver who sued the school district, claiming that its failure to monitor conduct on the bus created a dangerous environment. The Fifth Circuit acknowledged that the plaintiff's work situation was dangerous, but found that he faced nothing more than the ordinary risks associated with the job. *Id*. Likewise, in *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001), the plaintiff sued the city for its failure to prevent her ex-boyfriend from attempting to kill her. Her claim, however, implicated several city employees, including members of its police force, who allegedly assisted in harassing her. The Fifth Circuit concluded that the city did not place the plaintiff in danger, however, because she was already aware of her ex-boyfriend's "propensity for violence," and the city "at most left her in an already dangerous position." *Id*. at 584.

*v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). Generally, to support a § 1983 claim based on "an official policy or firmly entrenched custom," a plaintiff must show that the constitutional deprivation resulted from the following:

> 1) A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2) A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy.

*Richardson v. Oldham*, 12 F.3d 1373, 1382 (5th Cir. 1994). In addition, the plaintiff must attribute actual or constructive knowledge of such a custom to the policy-making officials or to one to whom the officials have delegated policy-making authority. Whether a particular official or governing body has final policy-making authority is a question of state law. *St. Louis v. Praprotnik*, 485 U.S. 112 (1988). In Texas, the body with final authority to make policy for an independent school district is that district's board of trustees. *Rivera*, 349 F.3d at 247 (citing *Jett v. Dallas Independent School District*, 7 F.3d 1241, 1245 (5th Cir. 1993); TEX. EDUC. CODE § 11.151 (Vernon 2003)). In this case, Plaintiff merely alleges that the school district failed to follow an existing school policy meant to protect children from wrongdoers. (Plaintiff's Response at ¶ 12). She has failed, however, to allege that any custom or policy of the school's was the cause in fact of O.F.'s injuries. (*See* Complaint). For these reasons, the court finds that Plaintiff has failed to state a claim under § 1983, and the case should be dismissed.

**Conclusion**

Based on the foregoing, it is ORDERED that Defendant's motion is GRANTED, and the case is dismissed, without prejudice, to filing in state court.

The Clerk of the Court shall enter this order and provide a true copy to all counsel of record.

SIGNED at Houston, Texas, this 28th day of October, 2005.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**